IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| FRENCHMAN CAMBRIDGE IRRIGATION DISTRICT, a Nebraska Political Subdivision;  BOSTWICK IRRIGATION DISTRICT IN NEBRASKA, a Nebraska Political Subdivision; DALE CRAMER, JAY SCHILLING, STEVE HENRY,<br><br>            Plaintiffs,<br><br>    v.<br><br>DAVE HEINEMAN, Governor of Nebraska; BRIAN DUNNIGAN, Director, Nebraska Dept. of Natural Resources;  UPPER REPUBLICAN NATURAL RESOURCES DISTRICT, A Nebraska Political Subdivision;  N-CORPE, An Interlocal Cooperative;  UNITED STATES OF AMERICA,  UNITED STATES DEPARTMENT OF INTERIOR, Bureau of Reclamation; KENNETH SALAZAR, Secretary of Interior; MICHAEL CONNOR, Commissioner of Bureau of Reclamation; and MICHAEL RYAN, Director, Great Plains Region, Bureau of Reclamation;<br><br>            Defendants. | **8:12CV445**<br><br>**MEMORANDUM AND ORDER** |

This matter is before the court on motions to dismiss filed by defendants N-CORPE and Upper Republican Natural Resources District (hereinafter, "the DNR Defendants"),[1] Filing No. 40; defendants Brian Dunnigan and Dave Heineman (hereinafter, "the State Defendants"),[2] Filing No. 42; and defendants Michael Connor,

---

[1] N-CORPE Stands for Nebraska Cooperative Republican Platte Enhancement Project. It is an interlocal governmental cooperative formed by agreement and organized by the upper Republican natural resources district, other natural resources districts and the Nebraska Department of natural resources. *See* Filing No. 1, Complaint at 12. The Upper Republican National Resources District ("NRD") is a Nebraska political subdivision.  *Id.*

[2] Defendant Dave Heineman is the Gov. of Nebraska, Brian Dunnigan is the director of the Nebraska Department of natural resources and also Nebraska's Commissioner for the Republican River Compact Administration.  *See* Filing No. 1, Complaint at 11.

Michael Ryan, Kenneth Salazar, the United States Department of Interior, and the United States of America (hereinafter, "the Federal Defendants"),[3] Filing No. 45.

This is an action for injunctive and declaratory relief involving a challenge to the DNR Defendants' and State Defendants' alleged plan to pump groundwater to surface water streams in order to remedy an alleged overuse of Nebraska's allocation of water under an Interstate Compact.   The plaintiffs are two political subdivisions organized under Nebraska law to deliver natural flow irrigation water and three farmers, landowners, and water-user patrons of those political subdivisions (hereinafter, collectively, "the Irrigation Districts").   They base jurisdiction on 28 U.S.C. §§ 1331 (federal question jurisdiction), 1346(f) (jurisdiction over quiet title claims against the United States), 1361 (mandamus jurisdiction), 1367a (supplemental jurisdiction), and 43 U.S.C. §§ 390uu (waiver of sovereign immunity for joinder of United States in any suit on a contract executed pursuant to Federal Reclamation Law) & 666(a) (consent to join United States as a defendant in suits for adjudication of water rights).   The plaintiffs seek a determination of rights to the waters of the Republican River Basin and the Platte Basin within Nebraska, an order compelling the Federal Defendants to protect FCID water rights and an injunction compelling all State and Federal Defendants to respect, and refrain from interfering with, those water rights. The plaintiffs do not seek damages as a remedy.

---

[3] Defendant Kenneth Salazar is Secretary of the Interior of the United States,  defendant Michael O'Connor is Commissioner of the Bureau of Reclamation, and defendant Michael J. Ryan is the Regional Director of the Great Plains Region of the United States Department of the Interior, Bureau of Reclamation.

2

The Federal Defendants move to dismiss for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1).  They assert the United States has not waived its sovereign immunity.  They also argue that the plaintiffs' complaint fails to state a claim upon which relief can be granted under Fed. R. Civ. P.  12(b)(6).

The DNR Defendants move to dismiss for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1) and for failure to state a claim under Fed. R. Civ. P. 12(b)(6).  They base their Fed. R. Civ. P. 12(b)(1) challenge on Eleventh Amendment immunity.  They argue that they work jointly with the State of Nebraska to comply with the Republican River Compact ("RRC") and act as an "arm of the State" for Eleventh Amendment immunity purposes.[4]  They also argue that there is no foundation for the exercise of supplemental jurisdiction over the plaintiffs' state law claims because the plaintiffs' federal claims are infirm and contend the court should decline discretionary jurisdiction over the state law claims.  Also, they contend the plaintiffs lack standing to pursue the claims.

The State Defendants similarly move to dismiss under Fed. R. Civ. P. 12(b)(1) and 12(b)(6).  They too argue that the plaintiffs' claims are barred by the Eleventh Amendment and assert that the State has not waived, and Congress has not abrogated, the State's sovereign immunity.  They further argue that the doctrine of *Ex Parte Young,* 209 U.S. 123 (2008), is inapplicable because the plaintiffs have not alleged any violation of federal law.   They also contend that the court should decline to exercise

---

[4] The Republican River originates in the high plains of Northeast Colorado, flows generally eastward from Colorado into and along the southern border of Nebraska, into Kansas.  In 1943, Colorado Kansas and Nebraska entered into the Republican River Compact.  Complaint at 16; *see* Republican River Compact, art. I, Pub. L. No. 78-60, 57 Stat. 86 (1943); 2A Neb. Rev. Stat. app. § 1–106 (Reissue 2008).

supplemental jurisdiction over the plaintiffs' state law claims, and alternatively argue that the plaintiffs' claims are subject to dismissal under state law.

I.      The Complaint

In their 63-page Complaint, the plaintiffs allege that the defendants have caused or permitted, and threaten to further cause and permit, groundwater of the Republican River Basin and the Platte Basin, to be pumped from the aquifer, and dumped into open streams to augment streamflow of the Republican River's mainstem for the purpose of delivering sufficient water to the State of Kansas in order to comply with the Republican River Compact, the Republican River Accounting Rules, and a modified Final Settlement Stipulation settling a suit between Kansas and Nebraska.[5]    Filing No. 1, Complaint at 3.   In general, the Irrigation Districts allege that the State of Nebraska receives a certain allocation of the water of the Republican River Basin under the agreement ultimately reached in the Supreme Court litigation.   *Id.* at 21.   Under the Final Settlement Stipulation, the states adopted the Republican River Compact Administration Groundwater Model, under which the compact allocates a specific number of acre-feet to each state on a basin-by-basin basis.   *See* Complaint at 17.   In the *Kansas v. Nebraska* litigation, a special master found that:

> [a]lthough the compact never uses the word 'groundwater,' stream flow which the compact fully allocates, comes from both surface runoff and groundwater discharge.   Interception of either of these streamflow sources can cause a state to receive more than its compact allocation and violate the compact. Thus the comprehensive definition of virgin water supply,

---

[5] In connection with the action, the Irrigation Districts ask the court to take judicial notice of all evidence offered and received before the special masters appointed by the United States Supreme Court in *Kansas v. Nebraska*, orig. action 126.   *See State of Kansas v. State of Nebraska*, No. 126, Orig., Second Report of the Special Master (Subject: Final Settlement Stipulation) (April 16, 2003); Final Settlement Stipulation, Volumes 1 to 5 (Dec. 15, 2002); *Kansas v. Nebraska*, 538 U.S. 720 (2003) (Mem).

even without use of the express term "groundwater" requires a conclusion that, as a matter of law, a state can violate the compact through excessive pumping of groundwater hydraulically connected to the Republican River and its tributaries.

Filing No. 1, Complaint at 21; *see State of Kansas v. State of Nebraska*, No 126, Orig., Final Report of the Special Master with Certificate of Adoption of RRCA Groundwater Model, 2003 WL 25904134 (September 17, 2003), *available at* www.supremecourt.gov/SpercMastRpt/SpecMastRpt.aspx (last visited September 18, 2013).

The Irrigation Districts assert the State Defendants threaten to disrupt and diminish inflows from naturally occurring groundwater accretions to streams, and from streams to federal reservoirs and lakes in Nebraska, and thereby reduce, disrupt, and intermittently eliminate the availability of surface waters to flow into the irrigation canals and ditches of the Irrigation Districts, which hold prior and superior water use rights and superior natural flowage easements that predate applicable water regulations. *See* Filing No. 1, Complaint at 3. The individual plaintiffs allege that "[e]ach individual Plaintiff uses water received from FCID, which is unavailable from any other source, to supply essential irrigation water to his growing crops" and contends that "[i]f this supply of water is interrupted, and if the relief sought in this Complaint is not granted, each individual Plaintiff, and each similarly situated water patron of FCID, will incur injury and loss." *Id.* at 7. The Irrigation Districts allege that each Irrigation District is an enterprise engaged in a commercial activity, and each will suffer an injury, specifically the threat that each will be put out of business if relief requested in this Complaint is not granted. *Id.* at 8.

5

The Irrigation Districts also allege that the Federal Defendants have contracted to provide surface water to the Irrigation Districts and to maintain surface water through a system of lakes and reservoirs to assure adequate surface waters are present to permit each district to fulfill its mission during years of plentiful, and less than plentiful, precipitation. *Id.* The plaintiffs also allege "[t]his is a comprehensive action involving determination of all rights in the Republican River basin in Nebraska." *See* Complaint at 13.

In particular, the plaintiffs challenge an Integrated Management Plan ("IMP") that was adopted by defendant for the Republican River Natural Resources District ("NRD") and its sister NRDs in the basin. *Id.* at 31. They allege that the IMP was adopted to permit Nebraska to claim, in the litigation in the United States Supreme Court that it had a regulatory scheme in place to ensure compliance with the RRC during years when water is short. *Id.* at 34. Essentially, they allege that the Upper Republican NRD consumes more water than is reasonable or beneficial, and such is detrimental to the Middle and Lower Republican NRDs. *Id.* at 35-36. They allege the Upper Republican NRD's excessive use removes critical groundwater from its natural locations and prevents its natural and continuous subterranean flow to surface streams where it is needed to supply water to meet the plaintiffs' needs and water rates. *Id.* at 36. They allege the Upper Republican NRD's annual maximum target level is an unreasonable allocation of water and assert that the State Defendants' and NRD defendants' conduct violates Nebraska's Constitutional and statutory priorities. *Id.*

The Irrigation Districts' first claim for relief involves the conduct of N-CORPE. They allege defendant Upper Republican NRD sponsored and spearheaded the project

to form N-CORPE, found land for acquisition that could be retired from production as irrigated crop land and used instead as a well field to pump groundwater "to be piped over great distance out of the aquifer and over land, bypassing federal lakes and reservoirs and bypassing the Irrigation Districts canals and ditches." *Id.* at 38. They argue that the proposed land acquisition will be followed by cessation of irrigated row crop production, construction of new groundwater wells and an aqueduct to transport the groundwater in an intrastate pipeline. *Id.* They allege that the State Defendants cooperated to create an Interlocal Cooperative Agency by adopting an Interlocal Cooperation Agreement under Neb. Rev. Stat. § 13–801, *et seq.* The plaintiffs detail alleged purchases of land, plans to issue bonds, and intentions to erect new wells and pipelines. *Id.* at 40-42. They allege the proposed N-CORPE project violates the RRC, and unlawfully prioritize uses of water under the Nebraska Constitution and statutes. *Id.* at 42. Additionally, they allege that the N-CORPE project unlawfully bypasses federal lakes and reservoirs. *Id.* at 43. Further, they allege the proposed project is unlawful, contrary to Nebraska public policy, and in violation of the Nebraska Constitution, statutes, and the law governing water user rights as defined by the Nebraska Supreme Court. *Id.* at 43.

The plaintiffs' second claim for relief relates to the State of Nebraska's alleged overuse of its allocation due to excess groundwater consumption and improper transfers. *Id.* at 50. Those allegations involve the planned construction of an over $2.1 million dollar pipeline. *Id.* at 50-51. They argue that pumping of groundwater from the aquifer does and will upset the hydrologic connection between groundwater and surfacewater. *Id.* at 51.

In its third claim for relief, the Irrigation Districts argue that the State Defendants have continued to over-pump groundwater and to sanction such conduct.  *Id.* at 53. They argue that the threat of contempt of the Supreme Court has not proven to be sufficient deterrent to cause the State Defendants to engage in meaningful actions to manage the waters of the basin. *Id.* at 53.

The plaintiffs' fourth, fifth, and sixth claims for relief relate to the Irrigation Districts' contracts with the United States Department of the Interior, Bureau of Reclamation, for irrigation water.  *Id.* at 54.  They allege the Federal Defendants have breached those contracts, causing the plaintiffs' harm and threatening them with more and continuing harm.  *Id.* at 59.  Specifically, they assert the federal government breached its obligations because it failed to:  procure and assure a supply of water, actually supply all water to which the Irrigation Districts are entitled, and failed to protect and ensure recognition and fulfillment of the Irrigation Districts priority surface water rights.  *Id.* at 61.

In support of their motion, the State and DNR Defendants have submitted the Interlocal Cooperation Agreement, the Integrated Management Plan jointly developed by the Department of Natural Resources and the Upper Republican NRD and pleadings from a case pending before the Department of Natural Resources involving the plaintiff Irrigation Districts and other Irrigation Districts.  Filing No. 41, Index of Evid., Exs. A-D.

I.    LAW

A.    Motion to Dismiss Standards

Under Federal Rule of Civil Procedure 12(b)(1), a court is required to dismiss a claim if the court lacks subject matter jurisdiction over it.  *Wheeler v. St. Louis S.W. Ry.,*

90 F.3d 327, 329 (8th Cir. 1996). However, a dismissal based on lack of subject matter jurisdiction will not be granted lightly. *Id.* The burden of establishing subject matter jurisdiction is on the party asserting jurisdiction. *Basso v. Utah Power and Light Co.,* 495 F.2d 906, 909 (10th Cir.1974). A district court "has the authority to dismiss an action for lack of subject matter jurisdiction on any one of three separate bases: '(1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts.'" *Johnson v. United States,* 534 F.3d 958, 962 (8th Cir. 2008) (*quoting Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir. 1981)).

Under the Federal Rules, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." *Fed. R. Civ. P. 8(a)(2).* The rules require a "'showing,' rather than a blanket assertion, of entitlement to relief." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 n.3. (2007) (quoting Fed. R. Civ. P. 8(a)(2)). "Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (quoting *Twombly*, 550 U.S. at 555).

In order to survive a motion to dismiss under *Fed. R. Civ. P. 12(b)(6)*, the plaintiff's obligation to provide the grounds for his entitlement to relief necessitates that the complaint contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.

"On the assumption that all the allegations in the complaint are true (even if doubtful in fact)," the allegations in the complaint must "raise a right to relief above the speculative level." *Twombly,* 550 U.S. at 555-56. In other words, the complaint must

9

plead "enough facts to state a claim for relief that is plausible on its face." *Id.* at 547. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (stating that the plausibility standard does not require a probability, but asks for more than a sheer possibility that a defendant has acted unlawfully.).

Thus, the court must find "enough factual matter (taken as true) to suggest" that "discovery will reveal evidence" of the elements of the claim. *Twombly,* 550 U.S. at 558, 556; *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 347 (2005) (explaining that something beyond a faint hope that the discovery process might lead eventually to some plausible cause of action must be alleged). When the allegations in a complaint, however true, could not raise a claim of entitlement to relief, the complaint should be dismissed for failure to set a claim under Fed. R. Civ. P. 12(b)(6). *Twombly*, 550 U.S. at 558; *Iqbal*, 556 U.S. at 679.

### B.    Federal Question Jurisdiction

An interstate compact is an act of Congress within the meaning of the federal-question-jurisdiction statute. *See Cuyler v. Adams*, 449 U.S. 433, 438-42 (1981); . *County of Boyd v.US Ecology, Inc.,* 48 F.3d 359, 361 (8th Cir. 1995) (stating "[a]n interstate compact is a creature of federal law"). Allocation of an interstate water source is accomplished through a compact approved by Congress or an equitable apportionment. *See Hinderlider v. La Plata River & Cherry Creek Ditch Co.*, 304 U.S. 92, 104-05 (1938).

### C.    Standing

"The issue of standing involves constitutional limitations on federal court jurisdiction under Article III of the Constitution, which confines the federal courts to adjudicating actual 'cases and controversies.'" *Potthoff v. Morin*, 245 F.3d 710, 715 (8th Cir. 2001); *see Oti Kaga v. So. Dak. Hous. Dev. Auth.*, 342 F.3d 871, 878 (8th Cir. 2003). The threshold question in every federal case is the plaintiff's standing to sue. *Steger v. Franco, Inc.,* 228 F.3d 889, 892 (8th Cir. 2000). Without standing, the court lacks subject matter jurisdiction to hear the suit. *Young Am. Corp. v. Affiliated Computer Servs.*, 424 F.3d 840, 843 (8th Cir. 2005).

To acquire Article III standing, "a plaintiff must have a 'personal stake in the outcome of the controversy.'" *Potthoff,* 245 F.3d at 714 (quoting *Baker v. Carr*, 369 U.S. 186, 209 (1962)). To satisfy the burden of establishing Article III standing, the plaintiff must show: (1) plaintiff suffered an "injury-in-fact," (2) a causal relationship exists between the injury and the challenged conduct, and (3) the injury likely will be redressed by a favorable decision. *Eckles v. City of Corydon*, 341 F.3d 762, 767 (8th Cir. 2003) (quoting *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180-81 (2000)); *see Lujan  v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992).

To survive a motion to dismiss, a complaint must contain more than bald assertions of injury. *Burton v. Cent. Interstate Low-Level Radioactive Waste Compact Comm'n*, 23 F.3d 208, 210 (8th Cir. 1994). "An injury-in-fact is a harm that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Steger*, 228 F.3d at 892 (quoting *Lujan*, 504 U.S. at 560). A threat of injury must be both real and immediate not conjectural and hypothetical. *Faibisch v. Univ. of Minn.*, (8th Cir. 2002). Additionally, the injury must be "fairly traceable to the challenged action of the

defendant." *Saunders v. Farmers Ins. Exch.*, 440 F.3d 940, 943 (8th Cir. 2006) (quoting *Lujan*, 504 U.S. at 560); *McClain v. Am. Econ. Ins. Co.*, 424 F.3d 728, 731 (8th Cir. 2005)).  "To establish standing, a plaintiff must show that it is likely that the remedy she seeks can redress her injury." *Faibish v. Univ. of Minn.,* 304 F.3d 797,  801 (8th Cir. 2002); *see Monsanto v. Geertson Seed Farms*, 130 S. Ct. 2743, 2752 (2010) (Article III standing requires that an injury be concrete, particularized, and actual or imminent; fairly traceable to the challenged action; and redressable by a favorable ruling).

In addition to the immutable requirements of Article III, "the federal judiciary has also adhered to a set of prudential principles that bear on the question of standing." *Valley Forge Christian Coll. v. Ams. United for Separation of Church and State, Inc.*, 454 U.S. 464, 474–75 (1982); *Oti Kaga*, 342 F.3d at 880. Prudential principles of standing are statutorily imposed jurisdictional limitations separate from and in addition to constitutional standing requirements. *Davis v. U.S. Bancorp*, 383 F.3d 761, 767 (8th Cir. 2004). "By imposing prudential limits on standing, 'the judiciary seeks to avoid deciding questions of broad social import where no individual rights would be vindicated and to limit access to the federal courts to litigants best suited to assert a particular claim.'" *Oti Kaga*, 342 F.3d at 880 (quoting *Gladstone Realtors v. Village of Bellwood*, 441 U.S. 91, 99–100 (1979)); *Elk Grove Unified Sch. Dist. v. Newdow*, 542 U.S. 1, 11 (2004) (stating that the prudential standing doctrine "embodies judicially self-imposed limits on the exercise of federal jurisdiction").

D.     Sovereign Immunity

To sue the United States, a plaintiff must show both a grant of subject matter jurisdiction and a waiver of sovereign immunity.  *Taylor v. United States*, 248 F.3d 736,

737 (8th Cir. 2001); *V S Ltd. P'ship v. Dep't of Hous. & Urban Dev.*, 235 F.3d 1109, 1112 (8th Cir. 2000). "A waiver of sovereign immunity must be strictly construed in favor of the sovereign." *Orff v. United States*, 545 U.S. 596, 601-02 (2005). Jurisdiction over any suit against the Government requires a clear statement from the United States waiving sovereign immunity. *United States v. White Mountain Apache Tribe,* 537 U.S. 465, 472 (2003); *V S Ltd. P'ship,* , 235 F.3d at 1112 .

The waiver of sovereign immunity found in 43 U.S.C. § 390uu[6] is limited to cases where the United States is joined as a party defendant in an action between third parties and does not waive the government's sovereign "immunity from suits directly against the United States." *Orff,* 545 U.S. at 604. Under 43 U.S.C. § 666(a) (generally referred to as "the McCarran Amendment"), the United States has waived immunity in any suit for "adjudication of rights to use of water of a river system or other source" or "for the administration of such rights, where it appears that the United States is the owner of or is in the process of acquiring water rights by appropriation under state law, a purchase, by exchange, or otherwise, and the United States is a necessary party to such suit." 43

--------

[6] That statute provides:

(a) Joinder of United States as defendant; costs

Consent is hereby given to join the United States as a defendant in any suit (1) for the adjudication of rights to the use of water of a river system or other source, or (2) for the administration of such rights, where it appears that the United States is the owner of or is in the process of acquiring water rights by appropriation under State law, by purchase, by exchange, or otherwise, and the United States is a necessary party to such suit. The United States, when a party to any such suit, shall (1) be deemed to have waived any right to plead that the State laws are inapplicable or that the United States is not amenable thereto by reason of its sovereignty, and (2) shall be subject to the judgments, orders, and decrees of the court having jurisdiction, and may obtain review thereof, in the same manner and to the same extent as a private individual under like circumstances: Provided, That no judgment for costs shall be entered against the United States in any such suit.

43 U.S.C. § 390uu.

U.S.C. § 666(a). That statute only provides a waiver of the United States' immunity for comprehensive adjudications in which all water rights claimants in the source have been joined. *See Dugan v. Rank*, 372 U.S. 609, 618 (1963). The McCarran Amendment was intended to avoid piecemeal adjudication of water rights. *Colorado River Conservation Dist. v. United States*, 424 U.S. 800, 819 (1976); *Wagoner Cnty. Rural Water Dist. No. 2 v. Grand River Dam Auth.*, 577 F.3d 1255, 1260 (10th Cir. 2009) ("Therefore, any waiver of immunity pursuant to the amendment is limited to comprehensive actions involving the determination of all rights in a particular water system"); *see also Jicarilla Apache Tribe v. United States*, 601 F.2d 1116, 1130 (10th Cir.1979) (the McCarran Amendment "manifests the Congressional intent to accomplish in one forum the general settlement of water rights of many users of a river system or other source."). "Put another way, the United States has not consented to suits in which fewer than all claimants to water rights are made parties." *Wagoner*, 577 F.3d at 1260.

The United States has waived sovereign immunity for damage actions for breach of contract in the Tucker Act, 28 U.S.C. § 1491, and the Little Tucker Act , 28 U.S.C. § 1295(a)(2). *See Tucson Airport Auth. v. Gen. Dynamics Corp.*, 136 F.3d 641, 646 (9th Cir. 1998) (holding that contract-based claims for declaratory and injunctive relief are impliedly barred by the Tucker Act). Congress has not consented in the Tucker Act to suits in the district court for injunctive or constructive trust relief. *United States v. Sherwood,* 312 U.S. 584, 588 (1941).

2. Eleventh Amendment Immunity

The Eleventh Amendment largely shields States from suit in federal court without their consent, leaving parties with claims against a State to present them, if the State permits, in the State's own tribunals.  *Hess v. Port Auth. Trans-Hudson Corp.,* 513 U.S. 30, 39 (1994); *see Alden v. Maine,* 527 U.S. 706, 713 (1999) (The Eleventh Amendment is a jurisdictional bar that precludes unconsented suits in federal court against a state and arms of the state).   States and arms of the state possess sovereign immunity from suits.  *Steadfast Ins. Co. v. Agric. Ins. Co.,* 507 F.3d 1250, 1252-53 (10th Cir. 2007) (finding that Grand River Dam Authority is an arm of the state).  A state may, however, waive its immunity. *See Lapides v. Bd. of Regents,* 535 U.S. 613, 618 (2002). "Generally, we will find a waiver either if the State voluntarily invokes our jurisdiction, or else if the State makes a clear declaration that it intends to submit itself to our jurisdiction." *College Sav. Bank v. Florida Prepaid Postsecondary Educ. Expense Bd.,* 527 U.S. 666, 675-76 (1999).

The Eleventh Amendment does not bar suit for an injunction against individuals who hold state office, but violate, or threaten to violate, federally protected rights of citizens. *Ex Parte Young,* 209 U.S. at 159-60.  Prospective equitable relief and a declaratory judgment against a state official violating federal law is permitted and a suit for that relief is not barred by the Eleventh Amendment. *Quern v. Jordan,* 440 U.S. 332, 337 (1979).  The Eleventh Amendment, however, deprives federal courts of jurisdiction over claims to enjoin a state official from prospective violation of state law or to require a state official to conform to state law. *Pennhurst State Sch. & Hosp. v. Halderman,* 465 U.S. 89, 104–06 (1984). In such a case, the "need to promote the supremacy of federal law" underlying the *Ex Parte Young* exception is absent. *Id.* at 106.

A bi-state entity created under an interstate compact generally does not enjoy Eleventh Amendment immunity from federal statutory claims. *Hess*, 513 U.S. at 52-53. The Eleventh Amendment does not protect political subdivisions that are not acting as the State itself. *Jinks v. Richland Cnty.*, 538 U.S. 456, 466 (2003). Only States and state officers acting in their official capacity are immune from suits for damages in federal court—plaintiffs may bring suit for damages against all others, including municipalities and other political subdivisions of a State. *Buckhannon Bd. and Care Home, Inc. v. West Virginia Dep't of Health and Human Res.,* 532 U.S. 598, 609 n.10 (2001).

The ultimate question of whether an entity is an arm of a State for purposes of the Eleventh Amendment turns on whether a State is the real party in interest in a case involving the entity. *Public Sch. Ret. Sys. of Mo. v. State St. Bank & Trust Co.,* 640 F.3d 821, 826 (8th Cir. 2011). In the Eighth Circuit, the arm of the state test requires a close analysis of the entity's relationship with the state. *Id.* Although whether an entity is an arm of the state is a question of federal law, courts engage in a detailed analysis of state law. *Id.; Regents of the Univ. of Cal. v. Doe,* 519 U.S. 425, 429 (1997). Considerations include the entity's degree of autonomy and control over its own affairs, its powers and characteristics under state law, and how a money judgment in litigation involving the entity could affect the states treasury. *Public Sch. Ret. Sys. of Mo.*, 640 F.3d at 827. In assessing the degree of autonomy, courts generally assess an entity's independence in comparison to the type of independence that a political subdivision possesses. *Id.; see Regents*, 519 U.S. at 429 n. 5 (noting that the question was whether a "state agency has the same kind of independent status as a county or is

16

instead an arm of the State"); *Mount Healthy Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 280 (1977) (noting that the question was whether a local school board was "to be treated as an arm of the State ... or [was] instead to be treated as a municipal corporation or other political subdivision").  "The more an entity's independence resembles that of a political subdivision, the less likely the entity is an arm of a State." *Public Sch. Ret. Sys. of Mo.,* 640 F.3d at 827.  A resemblance to a political subdivision is assessed in terms of operational and political independence from states.  *Id.* at 828–29.  The greater the state's ability to appoint an entity's leaders, the more likely that the entity is an arm of the state. *Id.* at 829.

Under Nebraska law, natural resources districts are political subdivisions.  Neb. Rev. Stat. § 2-3213(1) ("Districts shall be political subdivisions of the state, shall have perpetual succession, and may sue and be sued in the name of the district."); *see also* 36 Neb. Rev. Stat § 13-804(6)(a).  They are governed by an elected Board of Directors. Neb. Rev. Stat. § 2- 3213(2).  Under the Interlocal Cooperation Act, public agencies can enter into agreements with other public agencies. Neb. Rev. Stat. §13–804.  However, no entity created by local public agencies pursuant to the Interlocal Cooperation Act are considered state agencies and no employees of those entities are considered state employees.  Neb. Rev. Stat. §13 – 804 (7).

### E.    Declaratory Judgment Act

The Declaratory Judgment Act is not a waiver of sovereign immunity, and does not provide an independent basis for federal court jurisdiction.  *Victor Foods, Inc., v. Crossroads Econ. Dev.*, 977 F.2d 1224, 1227 (8th Cir. 1992); *see also Muirhead v. Mecham* 427 F.3d 14, 17 n.1 (1st Cir. 2005) ("the Declaratory Judgment Act does not

17

effect a waiver of sovereign immunity because it 'neither provides nor denies a jurisdictional basis for actions under federal law, but merely defines the scope of available declaratory relief').

F.      Supplemental Jurisdiction

"When the well pleaded complaint contains at least one claim that satisfies the [original jurisdiction] requirement, the District Court has original jurisdiction," and may exercise its [28 U.S.C.] § 1367 supplemental jurisdiction. *Exxon and Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 559 (2005).  Whether a plaintiff's state and federal claims derive from a common nucleus of operative fact "is ordinarily resolved on the pleadings." *New Rock Asset Partners, L.P. v. Preferred Entity Advancements, Inc.*, 101 F.3d 1492, 1505 (3d Cir. 1996).  The decision to exercise supplemental jurisdiction should be based on judicial economy, convenience, and fairness to litigants. *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 725 (1966); *see Grable & Sons Metal Prod., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 310 (2005) (recognizing, in the context of a claim of title to land and the national interest in providing a federal forum for federal tax litigation, that "in certain cases federal question jurisdiction will lie over state-law claims that implicate significant federal issues").

Where the state law claim involves a potentially difficult and novel question of state law—unhinged to any federal constitutional or statutory provision, "needless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law." *United Mine Workers,* 383 U.S. at 726.  When the "state claim turns on novel or unresolved questions of state law, especially where those questions concern the state's

18

interest in the administration of its government, principles of federalism and comity may dictate that these questions be left for decision by the state courts," and "[t]his is particularly true if the federal claim on which the state claim hangs has been dismissed." *Seabrook v. Jacobson*, 153 F.3d 70, 72 (2d Cir. 1998).  In the Eighth Circuit, the preference is to decline to exercise supplemental jurisdiction after all federal claims are dismissed.  *Bissada v. Arkansas Children's Hosp.*, 639 F.3d 825, 833 (8th Cir. 2011). Although it is within the district court's discretion to exercise supplemental jurisdiction after dismissal of a federal claim, where resolution of the remaining claims depends solely on a determination of state law, the court should decline to exercise jurisdiction. *Glorvigen v. Cirrus Design Corp.*, 581 F.3d 737, 749 (8th Cir. 2009); *see also Gregoire v. Class*, 236 F.3d 413, 420 (8th Cir. 2000) (stating that "[w]e stress the need to exercise judicial restraint and avoid state law issues wherever possible.").  In deciding whether to remand a case in this context, the courts consider "factors such as judicial economy, convenience, fairness and comity."  *Quinn v. Ocwen Fed. Bank FSB*, 470 F.3d 1240, 1249 (8th Cir. 2006).  The existence of a parallel, ongoing state court proceeding also provides a compelling reason for declining supplemental jurisdiction under 28 U.S.C. § 1367(c)(4).  *Brooklyn Heights Ass'n v. Nat'l Park Serv.*, 818 F. Supp. 2d 572,  (E.D.N.Y. 2011).

G.    Water Law Principles

The question of property rights to irrigation water from federal reclamation projects is governed by state law.  43 U.S.C.A. §§ 372, 383; *California v. United States*, 438 U.S. 645, 669 (1978).  Under the Reclamation Act of 1902, a massive program to provide federal financing, construction, and operation of water storage and distribution

projects to reclaim arid lands in many Western States was undertaken. *Orff*, 545 U.S. at 598. "Section 8 of the Reclamation Act, after referring to state water laws relating to water used in irrigation and preserved by the Act, contains an explicit direction that 'the Secretary of the Interior, in carrying out the provisions of this Act, shall proceed in conformity with such [state] laws.'" *California v. F.E.R.C.*, 495 U.S. 490, 504 (1990) (quoting 43 U.S.C. § 383). State water law controls the appropriation and later distribution of water, and any rights inherent in these functions. *Arizona v. California*, 460 U.S. 605, 620 (1983). Generally speaking, water "belongs to the public" and is held in trust by the states involved. *See, e.g., California Oregon Power Co. v. Beaver Portland Cement Co.*, 295 U.S. 142 (1935). Generally, the water rights of the federal government are also adjudicated in state proceedings such as a stream adjudication. *California v. United States*, 438 U.S. at 678 ("Perhaps the most eloquent expression of the need to observe state water law is found in the Senate Report on the McCarran Amendment, 43 U.S.C. § 666(a), which subjects the United States to state-court jurisdiction for general stream adjudications"). The McCarran Amendment, codified at 43 U.S.C. § 666, articulates the policy of the federal government to make state courts the primary forum for water rights adjudications. *Id.* The amendment waives the United States' sovereign immunity in certain state water cases. *See* 43 U.S.C. § 666(a).

Contracts implementing federally-funded water reclamation projects are by nature necessarily federal. *Nebraska v. Wyoming*, 325 U.S. 589, 615 (1945). Federal law is applied to interpret reclamation contracts. *Mohave Valley Irrigation & Drainage Dist. v. Norton*, 244 F.3d 1164, 1165 (9th Cir. 2001).

III.   DISCUSSION

20

A.    Federal Defendants

A careful reading of the plaintiffs' complaint shows that the dispute between the parties involves the issue of the appropriation or apportionment of water resources within the state of Nebraska.  The Republican River Compact is only peripheral to the controversy.  The compact itself expressly reserves to the states the apportionment of water within the states.  The water rights advanced by plaintiffs arise under Nebraska law and turn on an interpretation of Nebraska law.  The Integrated Management Plan that purportedly potentially infringes the plaintiffs' rights to ground or surface water is a matter of state law.

The court finds the plaintiffs have failed to show an unequivocal waiver of the United States' sovereign immunity.   The plaintiffs have failed to demonstrate that this matter is a comprehensive adjudication of all water rights in the Republican River basin in Nebraska so as to confer jurisdiction under 43 U.S.C. § 666a.  The allegations of the plaintiff's complaint show that the dispute involves the interests and rights of other Nebraska NRD's and landowners. Essentially, the plaintiffs allege that the Upper Republican River NRD over pumped water to the detriment of the Middle and Lower Republican River NRD's.  Those entities, as well as other landowners or irrigation users, are not parties to the suit. Accordingly, 43 U.S.C. § 666a does not provide a waiver of immunity for this action.

The plaintiffs also cite 28 U.S.C. § 1346 (f) as a source of jurisdiction.  However that statute refers to the waiver of immunity under the Quiet Title Act and no quiet title claim is asserted in the Complaint.  Further, jurisdiction under 43 U.S.C. § 390uu is foreclosed by the Supreme Court's holding that the statute waives immunity only in

21

actions in which the United States is joined as a party, and not in direct actions against the United States. *See* Orff, 545 U.S. at 596.

Alternatively, even if an action against the United States were not barred by sovereign immunity, the court finds the plaintiffs' complaint fails to state a cognizable claim against the Federal Defendants. The allegations that involve the Federal Defendants assert that the United States is breaching its obligations to the Irrigation Districts by failing to sue the state of Nebraska in order to prevent curtailment of water rights by state administrative authorities. The plaintiffs allege these obligations arise under certain repayment contracts regarding reclamation projects and federal reservoirs. They allege the United States has an obligation under the contracts to "prevent an object action by officials of the state of Nebraska . . . to refrain from interference with natural groundwater movements and stream flows." *See* Filing No. 1, Complaint, ¶ 12. Water rights under the Republican River Compact, as well as the Reclamation Act, are based on state law. The plaintiffs have not shown that the Federal Defendants have any such obligation under federal law. Notably, the plaintiffs have not pled that either the Tucker Act or the Administrative Procedure Act provide a basis for jurisdiction. Because the plaintiffs seek only equitable relief, the Tucker Act cannot provide a basis for jurisdiction. In addition, to the extent that the plaintiffs seek review of an administrative decision, that administrative decision was made by the director of the Nebraska Department of natural resources and not by any federal agent or entity. The court finds the plaintiffs have failed to state a claim for relief against the federal defendants.

B.     State and NRD Defendants

Having found the claims against the Federal Defendants subject to dismissal, the court declines to exercise supplemental jurisdiction over the remaining defendants. This issue involves novel and complex state law issues.  The State and NRD Defendants have shown that the plaintiffs' Irrigation Districts are presently litigating in an action pending before the Nebraska Department of Natural Resources.  Under the circumstances, the court finds it prudent to decline jurisdiction. Judicial economy would be disserved by the exercise of this court's supplemental jurisdiction, since a parallel and concurrent state court proceeding on an almost identical cause of action is proceeding.

Although the Nebraska Supreme Court found a lack of standing in a similar action involving plaintiff FCID, the court finds it is not necessary to address the issue in light of this court's disposition.  *See Frenchman–Cambridge Irrigation District v. Department of Natural Resources*, 801 N.W.2d 253, 259 (Neb. 2011) (finding FCID's allegations of potential injury insufficient to demonstrate it had suffered an injury in fact).

Also, the court need not address the Eleventh Amendment immunity issues except to note that plaintiffs have not alleged any violation of federal law so as to invoke the doctrine of *Ex Parte Young* with respect to the State Defendants.  It appears that the NRD Defendants are not arms of the state entitled to immunity, but rather are political subdivisions subject to suit.  However, the court need not resolve the issue since the plaintiffs' complaint contains only allegations of violation of state, not federal, law with respect to those defendants.[7]  Accordingly,

---

[7] The plaintiffs may have an avenue of relief open to them in federal court by way of intervening in the Supreme Court original action.  The United States Supreme Court recently opened the door to private

IT IS ORDERED:

1.     The motion to dismiss filed by defendants N-CORPE and Upper Republican Natural Resources District (Filing No. 40) is granted;

2.     The motion to dismiss filed by defendants Brian Dunnigan and Dave Heineman (Filing No. 42) is granted;

3.     The motion to dismiss filed by defendants Michael Connor, Michael Ryan, Kenneth Salazar, the United States Department of Interior, and the United States of America (Filing No. 45) is granted;

4.     This action is dismissed.

5.     A judgment of dismissal will be entered this date.

Dated this 24th day of September, 2013.

BY THE COURT:

s/ Joseph F. Bataillon
United States District Judge

---

water users to intervene in interstate water rights disputes. *South Carolina v. North Carolina*, 558 U.S. 256, 267-68 (2010).  Although the court denied municipalities the right to intervene, concluding that their interests were already represented by the states who were party to the litigation, it allowed intervention of a bi-state entity and a private energy company that operated dams generating electricity, finding "that the standard for intervention in original actions by nonstate entities is high, however, does not mean that it is insurmountable" and would allow such intervention in compelling circumstances.  *Id.* at 267-68.